UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

RICHARD J. DELPRINCE,

    Petitioner,

v.

NORFOLK SOUTHERN RAILWAY COMPANY,

    Respondent.

---

**DECISION AND ORDER**

1:18-CV-00648 EAW



## **INTRODUCTION**

Petitioner Richard J. DelPrince ("Petitioner") filed this action on June 7, 2018, requesting judicial review of an arbitration award rendered pursuant to the mandatory arbitration procedures of the Railway Labor Act ("RLA"), 45 U.S.C. § 153, First (q), that sustained the decision of respondent Norfolk Southern Railway Company ("Norfolk Southern" or "Respondent") to discharge Petitioner from employment. (Dkt. 1). Presently before the Court are two motions to dismiss: one brought by Kelvin Lockhart, James Ogle, Joshua Lafferty, and John Maskovac pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(5), and 12(b)(6) on August 29, 2018 (Dkt. 12); and one brought by Norfolk Southern pursuant to Rule 12(b)(6) on September 19, 2018 (Dkt. 18). For the reasons that follow, the Court grants the September 19, 2018, motion (Dkt. 18), and denies the August 29, 2018, motion (Dkt. 12) as moot.

- 1 -

## BACKGROUND

The following facts are taken from Petitioner's Amended Petition (Dkt. 30), the operative pleading in this matter, and the documents referenced therein.[1] As is required at this stage of the proceedings, the Court treats Petitioner's allegations as true.

Petitioner was employed by Respondent as a locomotive engineer for 18 years. (*Id.* at ¶¶ 1, 13). On February 3, 2016, Petitioner was working as the engineer on a train travelling between Binghamton and Buffalo, New York. (*Id.* at ¶ 13). He noticed that the locomotive had a problem with its sanders,[2] and he attempted to report the problem to the dispatcher on the company-provided radio which was not working properly. (*Id.*). He then used his personal cellphone to call the dispatcher instead and was told to proceed with his assignment. (*Id.*). Petitioner placed his cellphone in his jacket pocket and hung the jacket on the back of his seat, but forgot to turn it off. (*Id.* at ¶¶ 13, 15).

Petitioner's train approached an unannounced banner test, which is when railroad officials drop an "obstruction banner" in front of moving trains to test the engineer's ability

---

[1] On a motion to dismiss, "[t]he court may consider facts set forth in exhibits attached as part of the [petition] as well as those in the formal [petition] itself." *Chance v. Armstrong*, 143 F.3d 698, 698 n.1 (2d Cir. 1998); *see Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[T]he [petition] is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). The Amended Petition states that the decision of the Arbitration Board at issue is attached as Exhibit A (Dkt. 30 at ¶ 2), and that an excerpt from the transcript of the arbitration hearing is attached as Exhibit B (*id.* at ¶ 6). While no exhibits are attached to the Amended Petition, they are attached to the original petition. (Dkt. 1). Therefore, the Court considers the original petition's exhibits in rendering the instant Decision.

[2] Sanders are systems that use air to blow sand underneath the wheels of locomotives to increase traction.

to stop. (*Id.* at ¶ 18). Petitioner properly stopped his locomotive, and three of Respondent's officials boarded the train to conduct a job briefing. (Dkt. 1-1 at 3). When the railroad officials asked whether Petitioner's cellphone was turned off, he said that he did not know and then removed the phone from his jacket pocket. (*Id.*). It was determined that the cellphone was still on, and Petitioner was later removed from service and underwent a formal investigation. (*Id.* at 3-4). At the conclusion of the investigation, Respondent summarily fired Petitioner. (Dkt. 30 at ¶ 19).

Petitioner appealed Respondent's decision to Public Law Board No. 7717 (the "Board"). (Dkt. 1-1 at 2). On May 2, 2017, the Board sustained the decision to dismiss Petitioner from employment. (Dkt. 30 at ¶ 1). It found Petitioner was in violation of Respondent's Operating Rule 5, which requires, pursuant to federal regulations, that "all personal electronic devices, including earpieces, must be turned off and stored out of sight and not on the employee's person when on a moving train or engine[.]" (Dkt. 1-1 at 4); *see* 49 C.F.R. §§ 220.302, 220.305, 220.315. The decision stated: "It is not an acceptable excuse that [Petitioner]'s failure to turn off his phone might have been inadvertent," and also discussed Petitioner's previous disciplinary record. (Dkt. 1-1 at 4-5).

Petitioner filed the instant lawsuit on June 7, 2018, naming as respondents W.L. Sturgis, K. Lockhart, J.P. Ogle, Josh Lafferty, John J. Maskovac, and the Board. (Dkt. 1). On August 29, 2018, respondents Kelvin Lockhart, James Ogle, Joshua Lafferty, and John Maskovac filed a motion to dismiss. (Dkt. 12). Petitioner filed an amended petition on September 5, 2018, wherein Norfolk Southern was named as the only respondent. (Dkt. 15). Norfolk Southern filed a motion to dismiss on September 19, 2018. (Dkt. 18). On

November 13, 2018, Petitioner filed a response to Respondent's motion to dismiss. (Dkt. 27). Petitioner also filed a motion for leave to file a corrected amended petition to fix a scanning error causing a missing page, to which Respondent consented. (Dkt. 28). The Court granted Petitioner leave to file the corrected amended petition (Dkt. 29), and the complete Amended Petition was then filed on November 15, 2018 (Dkt. 30). Respondent filed its reply to Petitioner's response on November 20, 2018. (Dkt. 31).

## DISCUSSION

As a preliminary matter, while the original petition did name Kelvin Lockhart, James Ogle, Joshua Lafferty, and John Muskovac as respondents (Dkt. 1), the Amended Petition (Dkt. 30) only names Norfolk Southern. Accordingly, the Court denies as moot the August 29, 2018, motion to dismiss (Dkt. 12).

### I. <u>Legal Standard</u>

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the [petition], documents attached to the [petition] as exhibits, and documents incorporated by reference in the [petition]." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). A court should consider the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2279 (2017). To withstand dismissal, a claimant must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"While a [petition] attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotations and citations omitted). "To state a plausible claim, the [petition]'s '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Nielsen v. AECOM Tech. Corp.*, 762 F.3d 214, 218 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555).

## II. Judicial Review of the Board's Decision

Congress enacted the RLA "to provide for the prompt and orderly settlement of all disputes" between railway carriers and their employees. 45 U.S.C. § 151a. To accomplish this, the RLA imposes different dispute resolution procedures for "major" and "minor" disputes. *See United Transp. Union v. Nat'l R.R. Passenger Corp.*, 588 F.3d 805, 809 (2d Cir. 2009). A dispute is considered "major" if it relates "'to disputes over the formation of collective agreements or efforts to secure them,' while 'minor disputes' 'contemplate[ ] the existence of a collective agreement already concluded or, at any rate, a situation in which no effort is made to bring about a formal change in terms or to create a new one.'" *Id.* at 809-10 (quoting *Elgin, J. & E. Ry. Co. v. Burley*, 325 U.S. 711, 723 (1945)).

"Major" disputes require "voluntary processes of negotiation, mediation, voluntary arbitration, and conciliation" and are subject to judicial review on the merits. *Id.* (quoting *Elgin*, 325 U.S. at 725); *see Consol. Rail Corp. v. Ry. Labor Execs.' Ass'n*, 491 U.S. 299, 302-03 (1989). In contrast, minor disputes are exclusively handled by labor-management adjustment boards—either the National Labor Relations Board, or regional boards of adjustment established by agreement between employees and carriers. 45 U.S.C. § 184, *see Indep. Union of Flight Attendants v. Pan Am. World Airways, Inc.*, 789 F.2d 139, 141 (2d Cir. 1986). The Second Circuit has held that "disciplinary disputes even if involving employee discharge" are minor disputes. *Pan Am. World Airways*, 789 F.2d at 141.

The RLA allows for limited judicial review of a labor board's ruling on a minor dispute, providing as follows:

> On such review, the findings and order of the division shall be conclusive on the parties, except that the order of the division may be set aside, in whole or in part, or remanded to the division, for [1] failure of the division to comply with the requirements of this chapter, for [2] failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for [3] fraud or corruption by a member of the division making the order.

45 U.S.C. § 153, First (q).

The scope of judicial review of a labor board's decision is "among the narrowest known to the law." *Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 91 (1978) (quotation omitted). "[W]here fraud is not an issue we ask only whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it." *CSX Transp., Inc. v. United Transp. Union*, 950 F.2d 872, 877 (2d Cir. 1991); *see United Transp. Union*, 588 F.3d at 810 ("The federal courts do not sit as

super arbitration tribunals in suits brought to enforce awards of the Adjustment Board. They may not substitute their judgments for those of the Board divisions. They need not inquire whether substantial evidence supports the Board's awards." (quotation omitted)). "[O]nce the court is satisfied that they were interpreting the contract, judicial review is at an end, provided there is no fraud or corruption and the arbitrators haven't ordered anyone to do an illegal act." *Trans World Airlines, Inc. v. Sinicropi*, 887 F. Supp. 595, 612 (S.D.N.Y. 1995) (alteration in original) (quotation omitted), *aff'd*, 84 F.3d 116 (2d Cir. 1996). "[T]he Supreme Court 'time and again has emphasized and re-emphasized that Congress intended minor grievances of railroad workers to be decided finally by the Railroad Adjustment Board.'" *United Transp. Union*, 588 F.3d at 810.

Petitioner contends he is entitled to judicial review under all three prongs of § 153, First (q). The Court addresses each one in turn.

### A. Failure to Comply

"Typically, a federal court's review of board decisions under the 'failure to comply' prong has been limited to determining whether boards have complied with the RLA's procedural obligations." *United Transp. Union*, 588 F.3d at 811. These procedural obligations include giving parties due notice of the board hearing, 45 U.S.C. § 153, First (j), and submitting a "full statement of the facts and all supporting data bearing upon the disputes" to the board, *id.* § 153, First (i). The Second Circuit has also found judicial review appropriate under this prong when a labor board decides whether a carrier complied with specific provisions of the RLA. *United Transp. Union*, 588 F.3d at 811. However,

absent these circumstances, the Court may not review the arbitration award for failure to comply. *See CSX Transp.*, 950 F.2d at 877.

Petitioner alleges that Respondent failed to comply with the requirements of the RLA because Respondent "did not follow or comply with the legal contract." (Dkt. 27-3 at 6; *see* Dkt. 30 at ¶ 2(1)). Petitioner asserts that the collective bargaining agreement Respondent entered into with Petitioner's union (the "CBA") included various procedural requirements for the disciplinary investigation and hearing conducted by Respondent, and that Respondent failed to adhere to those CBA requirements. (Dkt. 27-3 at 10-12). Petitioner contends that because the proceedings conducted by Respondent violated the CBA, and the CBA was negotiated pursuant to the RLA's requirements, then Respondent's proceedings violated the RLA.[3] (*Id.* at 6; Dkt. 30 at ¶ 4). Petitioner also contends that the

---

[3] Petitioner characterizes his objections to Respondent's actions during the investigatory hearing as "due process" objections, although he does not claim that the award is subject to judicial review under due process grounds. (Dkt. 27-3 at 12). While this Circuit recognizes that due process violations during an arbitration award hearing may warrant judicial review of an arbitral award under § 153, First (q), Second Circuit courts have held that those due process protections do not extend to *pre*-arbitration internal procedures specified in a particular collective bargaining agreement. *See Martino v. Metro N. Commuter R.R. Co.*, 582 F. App'x 27, 29 (2d Cir. 2014) (summary order) (exercising jurisdiction over a due process challenge to an arbitration); *D'Elia v. N.Y., New Haven & Hartford R.R.*, 338 F.2d 701, 702 (2d Cir. 1964) (holding that carrier employee was entitled to an impartial proceeding before the Board, but not during an internal proceeding with the carrier); *Dominguez v. Miller*, No. 12 Civ. 231 (CBA), 2013 WL 703193, at *8 (E.D.N.Y. Jan. 18, 2013) (declining jurisdiction over due process claims regarding pre-arbitration proceedings), *report and recommendation adopted*, 2013 WL 703176 (E.D.N.Y. Feb. 26, 2013); *Christiani v. Metro-North Commuter R.R. Co.*, No. 92 Civ. 4494 (JFK), 1994 WL 74881, at *5 (S.D.N.Y. Mar. 7, 1994) (same).

Board violated the RLA by relying on Respondent's illegally-conducted proceedings. (Dkt. 30 at ¶ 4).

Petitioner's argument is without merit.[4] He does not contend that the Board failed to comply with a specific procedural provision of the RLA or issued a decision about whether Respondent complied with provisions of the RLA. Instead, his argument centers around Respondent's alleged lack of compliance with various procedures in the CBA, and the Board's rejection of that argument. (*See* Dkt. 1-1 at 5; Dkt. 1-2 at 11-13). The Board's decision about whether Respondent complied with the procedures in the CBA required it to interpret the CBA, and therefore it is precisely the type of decision where the Court must defer to the Board's judgment. *See Segal v. Trans World Airlines, Inc.*, 63 F. Supp. 2d 373, 380 (S.D.N.Y. 1999) (holding plaintiff's disagreement with arbitrator's assessment of evidence and allegations that arbitrator misinterpreted the CBA were not sufficient to vacate arbitration award); *see also Bhd. of Maint. of Way Emps. Div./IBT v. Norfolk S. Ry. Co.*, 745 F.3d 808, 815 (7th Cir. 2014) ("[T]he [plaintiff] is not asking us to interpret a federal statute but to interpret its collective bargaining agreement—what constitutes a fair

---

[4] Petitioner relies on an unreported decision from the Northern District of Georgia, *see Thompson v. Norfolk S. Ry. Co.*, No. 1:13-CV-1555-CC, 2015 WL 1509483 (N.D. Ga. Mar. 31, 2015), as well as a Fifth Circuit case, *Grimes v. BNSF Ry. Co.*, 746 F.3d 184 (5th Cir. 2014). The Court finds neither of these opinions persuasive in this context. Both *Thompson* and *Grimes* discussed claims pursuant to the Federal Rail Safety Act ("FRSA"), not the RLA. The *Grimes* court addressed how much weight should be given to arbitration board decisions in suits brought pursuant to the FRSA, and states in the decision: "The RLA makes the arbitral findings conclusive on the parties *in the dispute governed by the RLA*." *Id.* at 187-88. As the claim brought in the instant lawsuit is governed by the RLA, the *Grimes* decision does not support Petitioner's position, but refutes it. Additionally, *Thompson* applied the *Grimes* decision to a retaliation claim pursuant to the FRSA, and therefore also has no bearing on the instant matter.

and impartial hearing—a function exclusively reserved for a RLA Adjustment Board." (quotation omitted)).

Accordingly, the Court finds that Petitioner's allegations are not sufficient for the Court to review or set aside the arbitration award under the "failure to comply" prong.

### B. Scope of the Board's Jurisdiction

"The Board's jurisdiction extends to all disputes between carriers and their employees growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions[.]" *Union Pac. R. Co. v. Bhd. of Locomotive Eng'rs and Trainmen Gen. Comm. of Adjustment, Cent. Region*, 558 U.S. 67, 82 (2009). "For a court to find that an adjustment board exceeded its jurisdiction, the award must be 'wholly baseless and completely without reason.'" *Sokolowski v. Metro. Transp. Auth.*, 849 F. Supp. 2d 412, 416 (S.D.N.Y. 2012) (quoting *Gunther v. San Diego & Ariz. E. Ry. Co.*, 382 U.S. 257, 261 (1965)), *aff'd*, 529 F. App'x 48 (2d Cir. 2013). "Where fraud is not at issue, the court's inquiry is limited to the sole issue of 'whether the arbitrators did the job they were told to do—not whether they did it well, or correctly, or reasonably, but simply whether they did it.'" *Segal*, 63 F. Supp. 2d at 380 (quoting *CSX Transp.*, 950 F.2d at 877).

Here, the Board adjudicated a dispute between a carrier, Respondent, and an employee, Petitioner, over whether Respondent's decision to dismiss Petitioner was arbitrary or unreasonable under the CBA. (Dkt. 1-1 at 5). Such a decision falls squarely within the jurisdiction of the Board. Additionally, the Court has reviewed the arbitration decision attached as Exhibit A to the Petition (Dkt. 1-1), and on its face, the Board's award

was a reasoned application of the relevant cellphone usage rules to the facts of the February 3, 2016 incident. The Board details the undisputed facts, including that Petitioner reported the sander problem on his cellphone and then subsequently forgot to turn the phone off, then discusses Respondent's cellphone use rules, and then finds that Petitioner violated the rule and dismissal was warranted. (*Id.*). Whether the Court agrees with the outcome of the Board's decision is not relevant, *see United Transp. Union*, 588 F.3d at 810; the Court's inquiry is limited to whether the Board did its job, *see CSX Transp.*, 950 F.2d at 877. The Court finds that the Board here plainly satisfied that standard.

Petitioner contends that the Board went outside its jurisdiction by "ignoring the discipline clause" in the CBA and by considering matters outside of the "facts before the Board," namely a 2008 train collision that occurred in Chatsworth, an individual's propensity to answer a ringing cellphone, and the prior disciplinary record of Petitioner.[5] (Dkt. 27-3 at 12, 14; Dkt. 30 at ¶ 12).

---

[5] Petitioner cites a case from the District of Arizona in support of his argument that arbitration awards should be set aside if not drawn exclusively from the contract. (Dkt. 27-3 at 16). However, the Arizona court held the award "must have a basis that is *at least rationally inferable* . . . from the letter or purpose of the collective bargaining agreement," *Bradford v. Union Pac. R.R. Co.*, 872 F. Supp. 2d 912, 919 (D. Ariz. 2012) (emphasis added), not drawn exclusively. The court also rejected the arguments Petitioner makes here: "that the [board] erroneously failed to find a due process violation in the on-property investigation hearing, erroneously concluded that the Hearing Officer's decision was supported by substantial evidence and erroneously concluded that the discipline was reasonable." *Id.* at 919 n.4. The court found that the plaintiff, much like Petitioner, was attempting to use the jurisdictional prong of § 153, First (q) "as the basis for challenging the merits of the [board]'s findings." *Id.*

The Court is not persuaded by Petitioner's arguments. As discussed previously, the Court cannot analyze whether the Board correctly construed or applied the CBA; it may only determine if the Board did so at all. Additionally, none of the topics raised by Petitioner that were referenced by the Board fall outside the scope of the Board's jurisdiction. The Board discussed the Chatsworth collision and the tendency for an individual to answer a ringing phone to provide context for why Respondent implemented and enforced the no cellphone usage rule. (Dkt. 1-1 at 4). "Moreover, it is well established that an employee's past disciplinary record is a relevant factor to be considered in determining the type and propriety of discipline assessed." *Polewsky v. Nat'l R.R. Passenger Corp.*, 812 F. Supp. 33, 37 (D. Vt. 1992), *aff'd*, 993 F.2d 1532 (2d Cir. 1993). Petitioner does not allege that the RLA or CBA contain a provision that prohibits the arbitrator from considering matters of general knowledge in the industry or an employee's prior disciplinary record when issuing an award.[6] *See Martino v. Metro N. Commuter R. Co.*, No. 3:10cv1816 (JBA), 2013 WL 3208548, at *9 (D. Conn. June 24, 2013) ("Plaintiff has not alleged *any* factual matter about the authority of the arbitrator . . . , and therefore the Court cannot draw any reasonable inference that the neutral arbitrator . . . exceeded their authority."), *aff'd*, 582 F. App'x 27 (2d Cir. 2014). Accordingly, the Court finds

---

[6] Petitioner also alleges that he was fired as punishment for reporting the sanding issue, and that the award failed to comply with the RLA because it allowed for such retaliation. (Dkt. 30 at ¶¶ 14-15). However, the RLA does not address retaliation; rather, the FRSA establishes a private right of action for railroad employees claiming retaliation. 49 U.S.C. § 20109(d). Petitioner does not allege a FRSA claim, and the statute of limitations for such a claim has long since run. *Id.* § 20109(d)(2)(A)(ii).

Petitioner has not plausibly alleged that the Board exceeded the scope of its jurisdiction in issuing the award.

C. **Fraud or Corruption of Member of the Board**

To state a claim for review on the grounds of fraud or corruption, plaintiff must plausibly allege "that an arbitrator 'exhibit[ed] a complete unwillingness to respond, and indifference, to any evidence or argument in support of one of the parties' positions.'" *Dominguez v. Miller*, No. 12 CV 231(CBA)(LB), 2013 WL 703193, at *8 (E.D.N.Y. Jan. 18, 2013) (alteration in original) (quoting *Pac. & Arctic Ry. And Nav. Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991)), *report and recommendation adopted*, 2013 WL 703176 (E.D.N.Y. Feb. 26, 2013).

In Petitioner's Amended Petition, he fails to point to any statements made by an arbitrator on the Board that demonstrate he or she was indifferent or completely unwilling to respond to evidence presented. To the contrary, the award issued by the Board states, "we have given consideration to the [Petitioner]'s various arguments and find them to be unpersuasive." (Dkt. 1-1 at 5). The fact that the Board rendered an award unfavorable to Petitioner provides no basis for a fraud or corruption claim. *See Smith v. Am. Eagle Airlines, Inc.*, No. 07 CV 3363(NG)(RER), 2008 WL 2600857, at *4 (E.D.N.Y. July 1, 2008) (finding there was no fraud because "the Arbitration Award makes clear that the Board was not indifferent to plaintiff's arguments, but considered his version of events and found them not the least bit credible" (quotation omitted)).

Instead, Petitioner alleges that the decision of the Board "was the result of a give and take 'horse trading system'" where the arbitrators deny reinstatements in discharge

cases in favor of carriers and rule for laborer's unions in less costly cases so that they will keep their jobs. (Dkt. 30 at ¶¶ 21-24). However, Petitioner fails to allege facts that, if true, would demonstrate such a system existed. Petitioner acknowledges as much in his response papers, where he asks for the opportunity "to at least examine the question as to whether [Petitioner]'s case was decided on the merits or was part of a give and take win/loss process." (Dkt. 27-3 at 18). Such conclusory allegations are not sufficient to "raise a right to relief above the speculative level."[7] *Twombly*, 550 U.S. at 555.

Accordingly, the Court finds Petitioner's Amended Petition does not plausibly allege facts sufficient for a fraud or corruption claim. As there are no grounds that allow for judicial review of the arbitration award, the Court grants Respondent's motion to dismiss.

## **CONCLUSION**

For the foregoing reasons, the Court grants the September 19, 2018, motion to dismiss (Dkt. 18), and denies the August 29, 2018, motion to dismiss (Dkt. 12). The Clerk of Court is directed to enter judgment in favor of Respondent and close this case.

---

[7] Even if Petitioner did allege such facts, at least one court in this Circuit has found that alleged remarks by a neutral arbitrator expressing "concern that if she did not issue decisions and rulings in [the carrier's] favor she would be fired and her future employment in arbitrations with [the carrier] would be jeopardized" only demonstrate "'partiality' and do not rise to the level of 'fraud or corruption.'" *Camilien v. Am. Airlines, Inc.*, No. 99-CV-1953, 1999 WL 1288955, at *2 (E.D.N.Y. Nov. 5, 1999).

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: May 3, 2019
Rochester, New York